IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Andrea Dickey, | ) | C/A No. 3:09-867-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Carolina Children's Home, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Andrea Dickey ("Dickey"), filed this action pursuant to the Family Medical Leave Act ("FMLA") against her former employer, Carolina Children's Home ("the Children's Home"). Dickey claims that the Children's Home unlawfully interfered with the exercise of her rights under the FMLA.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the Children's Home's motion for summary judgment. (Docket Entry 19.) Dickey filed a response in opposition to the defendant's motion (Docket Entry 20) and the Children's Home filed a reply (Docket Entry 21). Having carefully considered the parties' submissions and the record in this case, the court finds that the defendant's motion should be granted.

**BACKGROUND**

Viewed in the light most favorable to the plaintiff, the following facts are relevant to the resolution of the defendant's motion. Dickey has a Bachelor of Science degree in Business

---

[1] Dickey initially also raised a retaliation claim under 29 U.S.C. § 2615(a)(2), but has since withdrawn that claim and is proceeding solely on the interference claim arising under § 2615(a)(1). (See Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., Docket Entry 20 at 1-2); see also Yashenko v. Harrah's N.C. Casino Co., LLC, 446 F.3d 541, 546 (4th Cir. 2006) (discussing the difference between FMLA "interference" or "entitlement" claims under subsection (a)(1) and FMLA "retaliation" or "discrimination" claims under subsection (a)(2)).



Administration. She began working for the Children's Home, a non-profit organization that provides care for abused, neglected, or other at-risk children, in April of 2007. Initially Dickey served in a temporary, part-time position as a recruiter in the Human Resources Department, where she reported to the Human Resources Director, Katherine Thrash. In October of that year, Dickey was hired as a full-time employee and began working as Admissions Coordinator, where she worked with state agencies in placing and processing children into the Children's Home, along with preparing reports. In that position she reported to Autumn Graham.

In July of 2008 Dickey experienced medical problems that required surgery. She requested and was approved for leave pursuant to the FMLA beginning on October 27, 2008. While Dickey was on leave, the Children's Home's Executive Director, Keith Jones, eliminated Dickey's position. Dickey was notified by letter that she was being laid off effective December 5, 2008[2] due to a "difficult period of economic challenges." (Docket Entry 20-2 at 2.) Not having heard of any restructuring occurring at the Children's Home, Dickey was surprised by this news and telephoned two of her fellow employees—an employee in the Human Resources Department named Sheila, and Dickey's supervisor, Graham. Neither was aware that Dickey's position had been eliminated. Dickey then contacted Wayne Parrish, the chairman of the Children's Home's board of trustees. Upon inquiring of Jones regarding Dickey's termination, Parrish reported back to Dickey that the Children's Home was going through a restructuring and that both Dickey and an employee in the Human Resources Department had been laid off, and that the duties of those two positions were

---

[2] Dickey's physician approved her to return to work with no restrictions on December 12, 2008.



being absorbed by an existing employee. Subsequently, the Children's Home hired another person to perform the human resources duties.

## DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of a violation of federal employment laws and look at the strength of a party's case on its own terms. In the discrimination context, the Supreme Court has stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Reeves, 530 U.S. at 148. The Court of Appeals for the Fourth Circuit has stated that the Reeves Court instructs more broadly regarding the factors "on which the appropriateness of a judgment as a matter of law will depend in any case and will include 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employers' case and that properly may be considered on a motion for judgment as a matter of law.' " Dennis, 290 F.3d at 649 (quoting Reeves, 530 U.S. at 148-49).

**B.     Job Restoration Under the Family Medical Leave Act**

To establish a *prima facie* case that the Children's Home interfered with her FMLA rights, Dickey must show: (1) that she was an eligible employee; (2) that her employer was covered under the FMLA; (3) that she was entitled to FMLA leave; (4) that she gave her employer adequate notice of her intention to take leave; and (5) that her employer denied her benefits to which she was entitled. Edgar v. JAC Products, Inc., 443 F.3d 501, 507 (6th Cir. 2006); Rodriguez v. Smithfield Packing Co., Inc., 545 F. Supp. 2d 508, 516 (D. Md. 2008). In the case at bar, only the fifth element is at issue.

The FMLA generally requires an employer to restore an employee to her position or an equivalent position upon completion of her approved FMLA leave. See 29 U.S.C. § 2614(a)(1). Applicable regulations further require that an employee be reinstated "even if the employee has been



replaced or his or her position has been restructured to accommodate the employee's absence." 29 C.F.R. § 825.214.

The United States Court of Appeals for the Fourth Circuit has held that the right to reinstatement under the FMLA is not absolute. Yashenko v. Harrah's N.C. Casino Co., LLC, 446 F.3d 541 (4th Cir. 2006). If an employee would have been discharged even if she had not taken leave, the FMLA does not require that she be restored to her prior job. Id. at 547 (relying on 29 C.F.R. § 825.216(a)). Thus, where the reason for an employee's termination is unrelated to her FMLA leave and her employment would have ended even if she had not taken leave, there is no right to reinstatement. Id. at 549-550.

Here, the Children's Home has presented unrefuted affidavits from both Jones and Lorrie Schmitt, the Director of Finance, that the Children's Home was adversely affected by the downturn in the national economy beginning in its fiscal year 2007-2008 and continuing into 2008-2009. (Jones Aff. ¶¶ 4-5, Docket Entry 19-4 at 2-3; Schmitt Aff. ¶¶ 2-3, Docket Entry 19-3 at 2.) Funding had decreased and budget cuts were necessary. (Jones Aff. ¶¶ 4-5, Docket Entry 19-4 at 2-3; Schmitt Aff. ¶ 4, Docket Entry 19-3 at 2-3.) In September of 2008, Jones and Schmitt began developing a financial plan to reduce costs. (Jones Aff. ¶ 6, Docket Entry 19-4 at 3; Schmitt Aff. ¶ 6, Docket Entry 19-3 at 3.) Because the Children's Home's overhead costs such as debt service, real estate costs, utilities, and so forth are relatively inflexible, Jones and Schmitt determined that those cuts had to be accomplished by reducing personnel costs. Additionally, because the Children's Home's professional staffing is regulated by the State, the administrative staff had to absorb those cuts. (Schmitt Aff. ¶ 6, Docket Entry 19-3 at 3.) Accordingly, Jones and Schmitt decided to eliminate the Human Resources Director and the Admissions Coordinator. Additionally, two clinical coordinator

positions were eliminated, and other available positions were not filled. Existing staff absorbed those job duties. These reductions saved the Children's Home approximately $250,000. (Schmitt Aff. ¶ 7, id. at 3-4.)

Dickey points to several circumstances from which she claims a reasonable jury could find that Jones is not telling the truth about the reason for her termination.[3] First, she argues that if her dismissal truly were attributable to economic reasons, the Human Resources Department and her immediate supervisor Autumn Graham would have known about it. Second, she argues that the fact that the Children's Home hired a temporary employee to answer the telephone shows that its financial situation did not require the elimination of her position. Further, she points to alleged discrepancies between the explanation she received from Parrish about the restructuring and the Children's Home's current explanation as to who is currently performing Dickey's job duties. She also argues that the Children's Home actually increased the number of its employees after her termination and that Jones hired new employees to perform jobs that Dickey could have done. Finally, she contends that Jones showed disregard for his duties under the FMLA as evidenced by

---

[3] The court observes that it is far from clear whether the McDonnell Douglas framework and its pretext analysis applies to FMLA *interference* claims. For example, in Yashenko, the Fourth Circuit noted that FMLA claims arising under a *retaliation* theory are analogous to those derived under Title VII and therefore utilized the McDonnell Douglas framework to analyze Yashenko's retaliation claim. Yashenko, 446 F.3d at 550-51; see also Dotson v. Pfizer, Inc. 558 F.3d 284, 296 (4th Cir. 2009) (applying the McDonnell Douglas framework to an FMLA retaliation claim). Notably, however, the Yashenko Court appears to have eschewed the explicit use of the McDonnell Douglas framework in analyzing Yashenko's interference claim and expressly declined to address the question of who bears the burden of proof when an employee's right to restoration is at issue. Yashenko, 446 F.3d at 549-50; see also Howard v. Inova Health Care Servs., 302 Fed. Appx. 166 (4th Cir. 2008) (unpublished) (reviewing claims for retaliation and interference under the FMLA and only applying the McDonnell Douglas framework to the retaliation claim). Nonetheless, it appears that, however characterized, the question of the legitimacy of an employer's purported reason for eliminating an FMLA plaintiff's position is a pertinent one. See Yashenko, 446 F.3d at 549-50.

a comment Jones made to Thrash, the Human Resources Director. Thrash avers that when Jones told Thrash that he was planning to eliminate Dickey's position, Thrash advised him to use caution because Dickey was on FMLA leave. Jones allegedly replied that he would let the lawyers handle that later.

The court disagrees that these circumstances, viewed either independently or in combination, constitute sufficient evidence from which a reasonable jury could find that Dickey would have retained her position had she not taken leave. Jones has averred that, to reduce anxiety and speculation among the staff, he and Schmitt did not discuss their restructuring plans with others until the employees affected by the reorganization were notified. Further, the hiring of a temporary employee to answer the telephone is only marginally probative—if at all—on the question whether Dickey, a full-time Admissions Coordinator with employment benefits, was terminated due to budget constraints. Furthermore, Dickey's attempt to create a credibility question based upon Parrish's e-mail fails, as Parrish simply states that Dickey's position and the human resource job that was also eliminated "were rolled up onto one job and is [sic] being filled by an existing staff person." (Docket Entry 20-2 at 3.) This statement is not inconsistent with Jones's affidavit on this point. (Jones Aff. ¶ 6, Docket Entry 19-4 at 3.) As to Dickey's argument regarding the hiring of new employees, the Children's Home has presented evidence that the new employees filled professional positions requiring experience in therapy, education, or counseling for which Dickey was not qualified. (See generally Jones Suppl. Aff. & Exs., Docket Entry 21-1) (discussing the new hires and attaching the job descriptions and qualifications for those positions). Dickey has presented no evidence refuting this, offering only her own unsupported opinion that she was qualified for those

PJG

jobs.[4] See, e.g., Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000) (stating that "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff") (internal quotation marks and citations omitted) (42 U.S.C. § 1981); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) (same) (Title VII, Failure to Promote Claim). Finally, Jones's comment to Thrash about leaving the FMLA issue to the lawyers, even accepted as true, is not probative as to the issue before the court. Although Dickey seeks to show by this supposedly inflammatory remark that Jones disregarded her FMLA rights, she herself acknowledges that ill intent is not an element of an FMLA interference claim. See Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006).

Taking the record as a whole and in the light most favorable to Dickey, the evidence she relies upon creates at most a weak issue of fact as to whether her position was legitimately eliminated due to economic concerns. This is insufficient to defeat a properly supported motion for summary judgment. See, e.g., Reeves, 530 U.S. at 148 (Title VII) (stating that "an employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred"). Because Dickey has failed to present evidence from which a reasonable jury could find that the Children's Home denied her FMLA benefits to which she was entitled, her FMLA claim fails. See Yashenko, 446 F.3d at 550 ("[E]ven accepting Yashenko's

---

[4] Dickey also argues that the Children's Home hired a "kitchen aid" in 2009. She has made no showing, however, that this job was "equivalent" to her prior position within the meaning of the FMLA. See 29 U.S.C. § 2614(a)(1) (providing the general requirement that an employer restore an employee to her position or an equivalent position upon completion of her approved FMLA leave).

PJG

evidence and drawing all inferences in his favor, a reasonable jury could not on this evidence find for him.").

## RECOMMENDATION

Accordingly, the court recommends that the defendant's motion for summary judgment ([Docket Entry 19](Docket Entry 19)) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 13, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).